Avery S. Mehlman (ID: 251072017)
Maxim M.L. Nowak (ID: 019892012)
Beth C. Khinchuk (ID: 276162019)
**HERRICK, FEINSTEIN LLP**
Two Park Avenue
New York, New York 10016
(212) 592-1400
AMehlman@herrick.com
MNowak@herrick.com
BKhinchuk@herrick.com
*Attorneys for Plaintiff*
*BMF Advance, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

– – – – – – – – – – – – – – – – – – – – – – – – – –X

BMF ADVANCE LLC,                                                  :

                                                                   **COMPLAINT**

                                Plaintiff,                         :

                                  v.                                :

EMPIREMEDIHOLDINGS, LLC, RETRO          :    Civil Action No:
CAPITAL, LLC, A NEW HORIZON LLC,
RESURGENCE CALIFORNIA LLC d/b/a          :
RESURGENCE CALIFORNIA, BALBOA
HORIZONS RECOVERY SERVICES INC.,         :
COMMISSIONS EARLY LLC, A NEW START
TREATMENT AND RECOVERY CENTER                 (JURY TRIAL DEMANDED)
LLC d/b/a MUSE TREATMENT,
RESURGENCE BEHAVIORAL HEALTH LLC,
RESURGENCE TENNESSEE LLC, ARON
HACOEN, DAVID DWEK, DOVID LAX,
MARC CHEMTOB, MAYER CHEMTOB, and
STEPHEN J. FENNELLY,

                              Defendants.        :

– – – – – – – – – – – – – – – – – – – – – – – – – –X

       Plaintiff BMF Advance LLC, located at 1820 Avenue M, Suite 125, Brooklyn, NY 11230

("Plaintiff" or "BMF"), through its attorneys Herrick, Feinstein LLP, as and for its Complaint

against defendants, EmpireMediHoldings, LLC, Retro Capital, LLC ("Retro"), A New Horizon LLC ("New Horizon" and with Retro, collectively the "Retro Defendants"), Resurgence California LLC d/b/a Resurgence California, Balboa Horizons Recovery Services Inc., Commissions Early LLC, A New Start Treatment and Recovery Center LLC d/b/a Muse Treatment, Resurgence Behavioral Health LLC, Resurgence Tennessee LLC,[1] Aron Hacoen, David Dwek, Dovid Lax, Marc Chemtob, Mayer Chemtob, and Steven J. Fennelly ("Fennelly") hereby alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for Tortious Interference with Contract, Fraud and Civil Conspiracy to Commit Fraud. Defendants, a confederation of a chain of substance abuse and rehabilitation centers, their owners and a group of sophisticated distressed asset financiers, illegally conspired to defraud Plaintiff, a merchant cash advance company, of millions of dollars.

2. Pursuant to a written contract entered on or about October 6, 2021, in exchange for a payment of $4,100,000, Plaintiff purchased $5,658,000 of receivables from several substance abuse and rehabilitation centers, the Resurgence Entities, that were controlled at the time by Fennelly. To avoid paying Plaintiff the millions of dollars owed to it, the Retro Defendants, their owners and affiliates engaged in a scheme — which has included potentially false material misrepresentations to a court — designed to prevent Plaintiff from collecting the monies it is unquestionably and legally owed. Accordingly, Plaintiff seeks the full outstanding balance owed to it by the Resurgence Entities, in addition to punitive damages, costs, interest and attorneys' fees and any other appropriate relief.

---

[1] Resurgence California LLC d/b/a Resurgence California, Balboa Horizons Recovery Services Inc., Commissions Early LLC, A New Start Treatment and Recovery Center LLC d/b/a Muse Treatment, Resurgence Behavioral Health LLC and Resurgence Tennessee LLC are collectively known as the "Resurgence Entities."

## PARTIES

3.      Plaintiff, BMF Advance LLC, is a limited liability company formed under the laws of the State of New York with a mailing address of 1820 Avenue M, Suite 125, Brooklyn, NY 11230.

4.      Upon    information    and    belief,    Defendant    EmpireMediHoldings    LLC ("EmpireMedi" or "EmpireMediHoldings") is a limited liability company formed under the laws of the State of New York with a mailing address of 10 Treeside Lane, Lakewood, New Jersey 08701 and organized by Steven Weiss.

5.      Upon information and belief, Defendant Retro Capital, LLC d/b/a Saturn Encore Funding is a limited liability company formed under the laws of the State of Delaware with a mailing address of 45 Goldcrest Drive, Lakewood, New Jersey 08701 and organized by Steven Weiss.

6.      Upon information and belief, Defendant A New Horizon LLC ("New Horizon") is a limited liability company formed under the laws of the State of Delaware with a mailing address of 1209 Orange Street, Wilmington, Delaware 19801.

7.      Upon    information    and    belief,    Defendant    Resurgence    California    LLC    d/b/a Resurgence California ("Resurgence California") is a limited liability company formed under the laws of the State of Nevada with a mailing address of 3064 Silver Sage Drive, Suite 150, Carson City, Nevada 89701.

8.      Upon information and belief, Defendant Balboa Horizons Recovery Services Inc. ("Balboa") is a corporation formed under the laws of the State of California with a mailing address of 1976 Derby Drive, Santa Ana, California 92705.

3

9.    Upon information and belief, Defendant Commissions Early LLC ("Commissions Early") is a limited liability company formed under the laws of the State of Nevada with a mailing address of 3064 Silver Sage Drive, Suite 150, Carson City, Nevada 89701.

10.    Upon information and belief, Defendant A New Start Treatment and Recovery Center LLC d/b/a Muse Treatment ("Muse") is a limited liability company formed under the laws of the State of California with a mailing address of 1251 Westwood Blvd., Los Angeles, California 90024.

11.    Upon information and belief, Defendant Resurgence Behavioral Health LLC ("RBH") is a limited liability company formed under the laws of the State of Nevada with a mailing address of 3064 Silver Sage Drive, Suite 150, Carson City, Nevada 89701.

12.    Upon information and belief, Defendant Resurgence Tennessee LLC ("Resurgence Tennessee") is a limited liability company formed under the laws of the State of Tennessee with a mailing address of 201 William D. Jones Blvd., Fayetteville, Tennessee 37334.

13.    Upon information and belief, Defendant David Dwek ("Dwek") is an individual who resides at 45 Goldcrest Drive, Lakewood, New Jersey 08701.

14.    Upon information and belief, Defendant Dovid G. Lax ("Lax") is an individual who resides at 124 Stratford Place, Lakewood, New Jersey 08701.

15.    Upon information and belief, Defendant Marc M. Chemtob ("Marc Chemtob") is an individual who resides at 250 Hollywood Avenue, Long Branch, New Jersey 07740.

16.    Upon information and belief, Defendant Mayer M. Chemtob ("Mayer Chemtob") is an individual who resides at 162 Daniel Drive, Lakewood, New Jersey 08701.

17.    Upon information and belief, Defendant Aron Hacoen ("Hacoen") is an individual who resides at 10 Treeside Lane, Lakewood, New Jersey 08701.

4

18.     Upon information and belief, Defendant Stephen J. Fennelly is an individual who currently resides at 646 Dorado Beach Cottages, Dorado, Puerto Rico 00646.

## JURISDICTION

19.     Plaintiff's sole member, Gavriel Yitzchakov (a.k.a. Gabe Isaacov), is a resident of the State of Florida.

20.     Upon information and belief, Retro has four members: Dwek, Lax, Mayer Chemtob and Marc Chemtob, each of whom is a resident of the State of New Jersey (collectively, the "Retro Members").

21.     Upon information and belief, the members of New Horizon are residents of the State of New Jersey.

22.     Upon information and belief, Hacoen, a resident of New Jersey, is the only publicly identified member of EmpireMedi.

23.     Upon information and belief, the Resurgence Entities are residents in the states of Tennessee, California and Nevada.

24.     Fennelly is currently a resident of the Commonwealth of Puerto Rico.

25.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is a dispute between citizens of different states.

26.     Specifically, upon information and belief, between April and November 2021, Fennelly, both directly and through his agents, engaged in extensive negotiations with Retro and the Retro Members while they were physically present in this District.  During these negotiations, the Defendants concocted and agreed to carry-out the scheme that is the subject of this complaint.

**VENUE**

27.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the activities alleged in this complaint took place in this District.

28.     Alternatively, venue is appropriate pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS

29.     Plaintiff is engaged in the receivable financing business.

30.     Shortly before October 6, 2021, Fennelly, as the owner of the Resurgence Entities, approached Plaintiff about entering into a merchant cash advance agreement.

31.     On or about October 6, 2021, the Resurgence Entities, with Fennelly as a guarantor, entered into a Secured Purchase Agreement (the "MCA Agreement") pursuant to which Plaintiff purchased 15% (the "Specified Percentage") of the Resurgence Entities' total future accounts receivable up to the sum of $5,658,000 (the "Purchased Amount") in exchange for an immediate payment of $4,100,000.  The parties to the MCA Agreement negotiated and agreed to the terms of the MCA Agreement in good faith and at arm's length.

32.     Pursuant to the MCA Agreement, every business day, the Resurgent Entities agreed to remit 15% of their daily receipts (the "Daily Remittance") via ACH payment.  Based on a review of the documents provided to Plaintiff by Resurgence Entities, the parties agreed in good faith that the initial Daily Remittance would be approximately $34,999 per business day, subject to the Resurgence Entities right to request a reconciliation should their receipts change.  A true and correct copy of the MCA Agreement is annexed hereto as **EXHIBIT A**.

33.     Pursuant to the MCA Agreement, Plaintiff was authorized to collect the Daily Remittance via ACH electronic debit (the "ACH Authorization") until such time as the Plaintiff had collected the entirety of the $5,658,000 Purchased Amount.

34.     To facilitate the Daily Remittance, the MCA Agreement contains covenants by the Resurgence Entities that they will not revoke the ACH Authorization or otherwise take any steps to interfere with Plaintiff's ability to collect the Daily Remittance.

35.     In connection with the execution of the MCA Agreement, Fennelly explicitly represented to Plaintiff that the Resurgence Entities would fully perform their obligations under the MCA Agreement.

36.     Pursuant to the ACH Authorization, the Plaintiff made nine debits of the Daily Remittance toward the Purchased Amount.

37.     Contrary to the covenants and representations discussed above, on or about October 20, 2021, the Resurgence Entities materially breached the MCA Agreement by blocking Plaintiff's ACH authorization to debit the Daily Remittance.

38.     Since October 20, 2021, the Resurgence Entities have failed to make any further remittances to Plaintiff, leaving a balance of $5,343,009 towards the Purchased Amount (the "Outstanding Balance").

39.     Upon information and belief, beginning in or around October 2020 and through 2021, the Resurgence Entities and Fennelly entered into at least seven (7) other merchant cash advance agreements that provided the Resurgence Entities with additional liquidity.  In connection with these agreements, Fennelly guaranteed the obligations of the Resurgence Entities, just as he did with the MCA Agreement.

40.     One of the earlier merchant cash advance companies with whom Fennelly dealt was Iruka Capital Group LLC ("Iruka").

41.     Upon information and belief, in connection with its merchant cash advance (the "Iruka MCA Agreement"), Iruka allegedly perfected its security interest in certain assets of Resurgence California, Balboa, Commissions Early, Muse, and various non-defendant entities owned by Fennelly[2] by filing a UCC-1 Financing Statement (the "Iruka UCC-1") with the California Secretary of State.

42.     Upon information and belief, but at the time unbeknownst to Plaintiff, in or around April 2021, Fennelly began exploring the sale of the Resurgence Entities.

43.     Upon information and belief, sometime in or around April 2021, Fennelly was introduced to Dwek and Lax as potential purchasers of the Resurgence Entities.

44.     Upon information and belief, after Fennelly's initial discussions with Dwek and Lax, Fennelly instructed Nathan Fransen, Esq. ("Fransen"), counsel for the Resurgence Entities, to contact Retro and the Retro Members to discuss the terms of a potential sale of the Resurgence Entitles to Retro, a distressed asset financing company.

45.     Upon information and belief, Fransen and the Retro Members discussed, among other things, the debts owed to various merchant cash advance companies and potential strategies to increase the Resurgence Entities' cash while stymying any efforts of merchant cash advance

---

[2] The Iruka UCC-1 also was filed against A Plus C Quality Construction LLC ("A Plus C"); Advanced Recovery Solutions, LLC ("ARS"), Better Soul Inc. ("Better Soul"); Coastal Recovery, Inc. ("Coastal Recovery"); Coastal Recovery Health & Wellness, Inc. ("Coastal Health"); Pearl of the Sea Retreat, LLC's ("Pearl"); and The Well Recovery Partners, Inc. ("Well Recovery Partners").

creditors to collect on their contracts by structuring a transaction to allow Retro, as the new owner of the Resurgence Entities, to avoid paying the merchant cash advance companies.

46.     Upon information and belief, the Retro Members explained to Fransen and Fennelly that they would create a new entity to become the owner of the Iruka MCA Agreement and successor in interest of the Iruka UCC-1 through purchase and/or assignment.  The Retro Members believed owning the Iruka MCA Agreement and the Iruka UCC-1 through an entity they could control, would allow the Retro Members to simultaneously cease enforcing the Iruka MCA Agreement and the Iruka UCC-1 and prevent any junior secured creditors of the Resurgence Entities, like Plaintiff, from enforcing claims to any of the Resurgence Entities' future receivables while at the same time allowing the Retro Members to operate the Resurgence Entities as a going concern.  The Retro Members planned to abuse their position as the new senior secured lender to allow the Resurgence Entities to operate without servicing their junior secured obligations.

47.     Approximately two days before the MCA Agreement was consummated between the Resurgence Entities and Plaintiff, Retro sent Fennelly a formal letter of intent, dated October 4, 2021, offering to purchase the Resurgence Entities and other related entities owned by Fennelly for $22.3 million (the "Retro LOI").  A copy of the Retro LOI is attached hereto as **Exhibit B**.

48.     Upon information and belief, in case the Retro Defendants were not able to avoid paying the merchant cash advance companies through the purchase of the Iruka MCA Agreement and the Iruka UCC-1, Retro structured its offer such that $7 million (the "Retro Settlement Reserve") of the proposed purchase price would be held in reserve to settle – for reduced amounts – with the merchant cash advance companies to which the Resurgence Entities were obligated.  Any amount of the Retro Settlement Reserve remaining after the merchant cash advance obligations were settled would revert to Fennelly.

9

49.     Upon information and belief, knowing that he had already negotiated a sale of the Resurgence Entities to Retro, and at least being knowledgeable of the scheme concocted by the Retro Defendants to block the payment of junior secured merchant cash advance companies, Fennelly and the Resurgence Entities nevertheless entered into the MCA Agreement with Plaintiff.

50.     Upon information and belief, on or around November 4, 2021, the Retro Members formed EmpireMedi to purchase the Iruka MCA Agreement and to take an assignment of the Iruka UCC-1.

51.     Upon further information and belief, the Retro Members advised Fransen, as agent for the Resurgence Entities and Fennelly, of their strategy to create a new affiliated entity, EmpireMedi, for the specific and sole purpose of taking an assignment of the Iruka MCA Agreement and, most importantly, the Iruka UCC-1.

52.     Upon information and belief, the newly created affiliated entity, EmpireMedi, with a principal mailing address of 10 Treeside Lane, Lakewood, New Jersey 08701, was organized on or about November 4, 2021 by a non-party individual named Steven Weiss.

53.     Upon information and belief, 10 Treeside Lane, Lakewood, New Jersey 08701 is owned by Hacoen, a confederate of the Retro Members.

54.     Upon information and belief, when the Retro Members and Retro Defendants analyzed purchasing the Resurgence entities, it was contemplated that Hacoen would be a key member of the new operating team.

55.     Accordingly, upon information and belief, EmpireMedi, Retro Capital, and New Horizon are effectively under the direct or indirect control of the Retro Members.

56.     Upon information and belief, on or around November 5, 2021, Iruka assigned EmpireMedi the Iruka MCA Agreement and the Iruka UCC-1.

10

57.     Upon information and belief, New Horizon, an affiliate of Retro, was formed in November 2021 for the sole purpose of consummating the purchase of Fennelly's Resurgence Entities by the Retro Members.

58.     Upon information and belief, on or about November 30, 2021, Fennelly and the Retro Defendants closed the transaction contemplated by the October 4, 2021, Retro LOI.  This Equity Interest Purchase Agreement By and Among A New Horizon, LLC, Stephen J. Fennelly, and Resurgence Behavioral Health, LLC substituted New Horizon for Retro as the purchaser of the Resurgence Entities.  Accordingly, on and after November 30, 2021, there was common ownership and/or control between EmpireMedi, the purported secured party enforcing its rights, and the Resurgence Entities against which EmpireMedi is claiming to be enforcing its rights.

59.     On or about November 15, 2021, EmpireMedi, through counsel Ashlee Colonna Cohen ("Colonna Cohen"), filed suit in New York State Supreme Court, New York County (the "EmpireMedi Suit") attempting to block Plaintiff from collecting the amounts owed to it by the Resurgence Enmities.

60.     The EmpireMedi suit alleges, *inter alia*, that BMF Advance and other merchant cash advance companies collection efforts converted accounts receivable belonging to the Resurgence Entities upon which EmpireMedi, by taking an assignment of the Iruka UCC-1, now claimed a first priority security interest.

61.     Upon information and belief, EmpireMedi made this misrepresentation to the court even though EmpireMedi did not even have a perfected security interest, much less a priority security interest, in two of the Resurgence Entities, Resurgence California LLC and Commissions Early LLC.

11

62.     On November 19, 2021, based upon EmpireMedi's express representations that it maintained a first priority security interest in the accounts receivable of the Resurgence Entities *that it was enforcing,* the court in the EmpireMedi Suit issued an *ex parte* temporary restraining order (the "TRO") that, in essence, prohibited Plaintiff from attempting to pursue the Resurgence Entities' receivables as set forth in the MCA Agreement.

63.     On or about August 26, 2022, in connection with the EmpireMedi Suit, Fennelly signed a 43-paragraph affidavit (the "Fennelly Affidavit").  The purpose of the Fennelly Affidavit was to explain Fennelly's sale of the Resurgence Entities to the Retro Members. A true and correct copy of the Fennelly Affidavit is attached hereto as **EXHIBIT C.**

64.     In paragraph 15 of the Fennelly Affidavit, Fennelly swears that it was the Retro Members' "strategy [to] form[] a new entity, EmpireMediHoldings, LLC [] for the specific purpose of taking an assignment of the Iruka MCA and the associated UCC-1 Financing Statement" so that EmpireMedi "would become the owner of the first-priority UCC-1 Financing Statement and would be able to file a lawsuit to prevent any junior secured creditors from enforcing their security interests against the Merchants and [Fennelly]."

65.     In paragraph 25 of the Fennelly Affidavit, Fennelly further swears that after November 5, 2021, "EmpireMediHoldings immediately ceased any and all collection efforts against the Merchants and released the hold created by the Iruka UCC Lien Notice" and "there have been no further actions by EmpireMediHoldings to enforce the Merchants' obligations under the Iruka MCA."[3]

---

[3] On or about October 24, 2022, Colonna Cohen filed a seven-paragraph affidavit in the EmpireMedi Suit purportedly signed by Fennelly on September 22, 2022 (the "Second Affidavit"). The purpose of the Second Affidavit appears to be to discuss the origins of the Fennelly Affidavit and address Fennelly's relationship with

66.     Upon information and belief, EmpireMedi has taken no steps to collect any of the amounts due under the Iruka MCA Agreement and the Iruka UCC-1 and does not intend to ever do so because it is a mere ruse to shield the Resurgence Entities for their other creditors and allow them to continue to operate and utilize the accounts receivables that were purchased by Plaintiff and other merchant cash advance companies.

67.     Upon information and belief, EmpireMedi has not, and does not intend to, enforce its rights against the Resurgence Entities because EmpireMedi and the Resurgence Entities are directly or indirectly owned and/or controlled by the same entities or individuals. .

68.     After the Resurgence Entities defaulted on their obligations under the MCA Agreement in 2021, Plaintiff attempted to collect the amounts owed to it.  On December 9, 2021, Plaintiff commenced a breach of contract action against the Resurgence Entities in New York State Supreme Court, Kings County (the "BMF Advance Lawsuit").

69.     On or about March 7, 2022, Colonna Cohen filed an answer on behalf of the Resurgence Entities.

70.     Upon information and belief, Colonna Cohen continues to represent both EmpireMedi in the EmpireMedi Suit and the Resurgence Entities in the BMF Advance Lawsuit. Accordingly, in addition to common ownership and/or control between Empiremedi and the Resurgence Entities, they are also represented by the same counsel.

71.     Upon information and belief, On July 6, 2022, in further reliance on the representations by EmpireMedi that it was enforcing its rights against the Resurgence Entities, the

---

Colonna Cohen.  Nowhere in the Second Affidavit does Fennelly purport to withdraw or alter any of the statements to which he swore under the penalties of perjury that are quoted in paragraphs 64 and 65 of this Complaint.  A true and correct copy of the Second Affidavit is attached hereto as **Exhibit D**.

court extended the TRO indefinitely, without requiring EmpireMedi to post an undertaking.  The injunction was exactly what the Retro Defendants and their confederates envisioned when they began negotiating the Retro LOI in or around April 2021.

72.     Based upon documents filed by Empiremedi in the EmpireMedi Suit, the amount outstanding on the Iruka obligation was only $331,460 and the Resurgence Entities generate over $100,000 of receivables each business day such that the Iruka obligation purchased by Empiremedi would have been paid off in less than a week if Empiremedi was actually enforcing its rights.  Notwithstanding the foregoing, in pleadings filed by Empiremedi on or about November 7, 2022, almost one year after the issuance of the TRO, Empiremedi represented to the court that it had been enforcing its rights against the Resurgence Entities but that the Iruka obligation purchased by EmpireMedi was still outstanding.

73.     Upon information and belief, at no time prior to November 2021 did Fennelly or any of the Retro Defendants inform Plaintiff of the scheme devised by Fennelly and the Retro Defendants or the agreements between and among the Defendants to facilitate the sale of the Resurgence Entities in such a manner as to prevent merchant cash advance companies that funded and perfected their security interests after Iruka, which came to include Plaintiff after the scheme was devised, from collecting the Balances owed to them, including the Outstanding Balance owed to Plaintiff under the MCA Agreement.

## COUNT ONE
**(Tortious Interference with Contract Against the Retro Defendants and Retro Members)**

74.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of the Complaint as though set forth fully herein.

75.     The MCA Agreement was a valid and binding contract when it was entered into on October 6, 2021, and Plaintiff took all steps necessary to complete its obligations under the MCA Agreement, including the payment of $4.1 million to the Resurgence Entities.

76.     Upon information and belief, before November 4, 2021, Fennelly informed the Retro Members that the Resurgence Entities had a valid and binding agreement with Plaintiff that required the Resurgence Entities to remit the Outstanding Balance to Plaintiff.

77.     Upon information and belief, the Retro Defendants formed EmpireMedi and orchestrated the purchase of the Iruka MCA Agreement contract and the Iruka UCC-1 with the express intention and purpose of interfering with the Resurgence Entities' merchant cash advance contracts, and specifically with Plaintiff's ability to collect the amount due to Plaintiff under the MCA Agreement.

78.     The Resurgence Entities have not paid any amounts due under the MCA Agreement since October 20, 2021, and in fact, breached the MCA Agreement after only a few days.

79.     Upon information and belief, as the purchaser of the Resurgence Entities, New Horizon is liable for the debts owed by Resurgence Entities to Plaintiff under the MCA Agreement but has not made any payments of the amounts due under the MCA Agreement.

80.     Using EmpireMedi, the Retro Defendants have enjoined Plaintiff from collecting any of the amounts due to it under the MCA Agreement.

81.     As a direct and proximate result of the Retro Defendants' deliberate interference with the MCA Agreement through EmpireMedi's purchase of the Iruka MCA Agreement and the Iruka UCC-1, Plaintiff has suffered damages in an amount to be proven along with interest, costs and fees.

82.     As the result of the Retro Members and Retro Defendants' intentional bad faith interference with the MCA Agreement, Plaintiff should be awarded punitive damages in an amount to be determined at trial.

## COUNT TWO
### (Fraud as Against Fennelly)

83.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of the Complaint as though set forth fully herein.

84.     Defendant Fennelly willfully, intentionally, maliciously and knowingly deceived and defrauded Plaintiff.

85.     With full knowledge of the falsity of his representations when made, Fennelly represented to Plaintiff that the Resurgence Entities intended to pay the Purchased Amount daily until it was paid in full, pursuant to the schedule contemplated in the MCA Agreement.

86.     The Resurgence Entities' representation that they intended to pay was material and induced Plaintiff into entering into the MCA Agreement.

87.     With full knowledge of the falsity of his representations when made, Fennelly also represented that he was the owner of the Resurgence Entities, thereby making his personal guaranty of the MCA Agreement a valuable consideration for Plaintiff to enter into the MCA Agreement.

88.     Fennelly's representation that he was the owner of the Resurgence Entities was material and induced Plaintiff into entering into the MCA Agreement.

89.     Fennelly also failed to tell Plaintiff that he and the Resurgence Entities had already entered into a scheme with the Retro Defendants to sell the Resurgence Entities and that neither he nor the Resurgence Entities ever intended to honor their respective obligations under

the MCA Agreement but rather intended to use a portion of the Retro Settlement Reserve to settle the MCA Agreement for less than the total amount due thereunder and to use the Iruka UCC-1 as a pretense for indefinitely preventing Plaintiff from enforcing its rights under the MCA Agreement.

90.     Fennelly's omission was material as Plaintiff would never have agreed to the MCA Agreement had it known the true facts.

91.     Upon information and belief, Fennelly knew that his misrepresentations and omissions were material when made and he made them with the intention of misleading Plaintiff into sending $4.1 million in cash to the Resurgent Entities, for which Plaintiff would never be fully compensated.

92.     Fennelly intended for Plaintiff to rely upon these misrepresentations and omissions as a means by which to fraudulently induce Plaintiff to enter into the MCA Agreement.

93.     Plaintiff reasonably relied upon Fennelly's misrepresentations and omissions, and, as a result, provided Fennelly's companies with millions of dollars.

94.     Absent Fennelly's material misrepresentations and omissions, Plaintiff would have never entered into the MCA Agreement and paid the Resurgence Entities millions of dollars.

95.     As a direct and proximate result of Fennelly's fraudulent inducement, Plaintiff has suffered damages in an amount to be proven at trial, but in no event less than $5,343,009, along with interest, costs and fees.

96.    As the result of Fennelly's fraudulent inducement, Plaintiff should be awarded punitive damages in an amount to be determined at trial.

## COUNT THREE
### (Civil Conspiracy to Commit Fraud as Against All Defendants)

97.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs of the Complaint as though set forth fully herein.

98.    Each of the Defendants entered into a series of agreements with each other, acted in concert with one another and aided and abetted each other to fraudulently induce Plaintiff into entering into the MCA Agreement and paying $4.1 million to the Resurgence Entities knowing that they had devised a plan to avoid paying the amounts owed by the Resurgence Entities under the MCA Agreement.

99.    Defendants, by reason and virtue of the conduct alleged herein, wrongfully and unlawfully acted in concert to obtain $4.1 million from Plaintiff for the Resurgence Entities prior to their purchase by the Retro Defendants from Fennelly, all the while hatching and implementing a scheme to make it impossible for Plaintiff to collect the money due to it under the MCA Agreement.

100.    The Retro Defendants, Retro Members and Fennelly agreed amongst themselves to fraudulently induce Plaintiff to enter into the MCA Agreement with the Resurgence Entities knowing that: (a) the Resurgence Entities had no intention of honoring the terms of the MCA Agreement because Fennelly had agreed to sell the Resurgence Entities to Retro who would then use the Retro Settlement Reserve to attempt to avoid paying the full Outstanding Balance to Plaintiff; and (b) that Retro would acquire the Iruka MCA Agreement and the Iruka UCC-1 for the

sole purpose of improperly precluding Plaintiff from collecting the Outstanding Balance, while failing to enforce the terms of the Iruka MCA Agreement against the Resurgence Entities.

101.    Fennelly fraudulently misrepresented the intentions of the Resurgence Entities at the behest and for the benefit of the Retro Defendants, who, as the purchasers of the Resurgence Entities, would directly and materially benefit from the scheme to prevent Plaintiff from collecting the amount due under the MCA Agreement.  This misrepresentation was material because it induced Plaintiff into entering into the MCA Agreement.

102.    To complete the scheme, the Retro Defendants enlisted the help of Hacoen and EmpireMedi to frustrate the Plaintiff's collections efforts.

103.    Plaintiff reasonably relied upon Fennelly's misrepresentation and omissions made after Fennelly had consulted with the Retro Defendants and knew their plans for the Resurgence Entities.

104.    As a direct and proximate result of Fennelly and the Retro Defendants' conspiracy to defraud, Plaintiff has suffered damages in an amount to be proven at trial, but in no event less than $5,343,009, along with interest, costs and fees.

105.    As the result of this conspiracy, Plaintiff should be awarded punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor as follows:

A.    On the First Claim against the Retro Members and Retro Defendants, jointly and severally, an amount to be proven at trial along with interest, costs and fees as well as punitive damages to be determined at trial;

B.      On the Second Claim against Fennelly, an amount to be proven at trial along with interest, costs and fees as well as punitive damages to be determined at trial;

C.      On the Third Claim against all Defendants, jointly and severally, an amount to be proven at trial along with interest, costs and fees as well as punitive damages to be determined at trial;

D.      Pre- and post- judgment interest; and

E.      Such other relief as the Court deems just and proper.

Dated: February 9, 2023                          By: /s Avery S. Mehlman
New York, New York                               Avery S. Mehlman (ID: 251072017)
                                                 Maxim M.L. Nowak (ID: 019892012)
                                                 Beth C. Khinchuk (ID: 276162019)
                                                 **HERRICK, FEINSTEIN LLP**
                                                 Two Park Avenue
                                                 New York, New York 10016
                                                 (212) 592-1400
                                                 AMehlman@herrick.com
                                                 MNowak@herrick.com
                                                 BKhinchuk@herrick.com
                                                 *Attorneys for Plaintiff, BMF Advance LLC*